FILED BY ____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE   FEB 28 PM 4: 07
WESTERN DIVISION

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| CYNTHIA KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-2549 |
| ) | |
| FEDERAL EXPRESS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Before the Court is the motion of Defendant Federal Express ("Defendant") to dismiss, pursuant to Rule 12 of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant moves the Court to dismiss Plaintiff Cynthia King's ("Plaintiff") complaint in its entirety. The complaint alleges claims of employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). For the following reasons, Defendant's motion for summary judgment is GRANTED.[1]

---

[1] As Defendant attached a written agreement between Plaintiff and Defendant to its motion and the Court relied on that exhibit in making its decision, the motion will be treated as a motion for summary judgment. Rule 12 of the Federal Rules of Civil Procedure states in pertinent part:

> If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  3-1-05

(15)

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff began her employment with Defendant on June 9, 1980. In 1991, she began working in the corporate sales department, which consisted of four white employees and Plaintiff, the only black employee in the department and the only one over 40 years old. At some point during the nine years that Plaintiff worked in that department, she filed an internal grievance, which resulted in the determination that she had been discriminated against in the promotional process. In 2000, the corporate sales department was reorganized into the Informational Technology Department ("IT"). However, when it became clear that there would be layoffs in IT, the other four employees were reorganized into the Sales Technology Department. Plaintiff, who had seniority over the others, remained in IT and was discharged as a result of the job eliminations in IT. On September 7, 2000, Plaintiff was told, without notice, to turn in her badge and security escorted her out of the building. She was told at that time that she would be officially terminated on November 30, 2000. On September 22, 2000, Plaintiff was given the option of receiving a severance package, including a severance payment of $23,051.04, in return for waiving any and all claims that Plaintiff might have had against Defendant. Plaintiff signed the agreement on October 12, 2000. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant on August 31, 2001. Plaintiff received a right-to-sue letter from the EEOC and filed a complaint with this Court on July 19, 2004. Defendant filed the instant motion to dismiss, pursuant to Fed. R. Civ. P. 12, or in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56, on September 10, 2004.

---

[2] For purposes of this motion, the Court accepts these facts to be true. They are taken from the complaint, Defendant's motion for summary judgment, and Plaintiffs' response to Defendant's motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

As previously noted, because the Court considered the agreement that was attached to Defendant's motion, the motion will be considered a summary judgment motion instead of a motion to dismiss. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be

in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III. ANALYSIS

Defendant asserts that summary judgment should be granted because 1) Plaintiff signed an agreement waiving her right to bring any action against Defendant in exchange for a severance package; 2) FedEx Corporate Services, not Federal Express Corporation, was Plaintiff's employer at the time of her termination; and 3) Plaintiff failed to exhaust her administrative remedies. As the Court holds that Plaintiff waived her right to bring this action when she signed the severance agreement, there is no need to examine the other arguments.

An employee cannot waive the right to bring an EEOC claim because public policy prohibits

4

obstructing EEOC enforcement of civil rights laws. (See, e.g., Wastak v. Lehigh Valley Health Network, 342 F.3d 281 (3rd Cir. 2003); E.E.O.C. v. SunDance Rehabilitation Corp., 328 F.Supp.2d 826 (N.D. Ohio, 2004)). Ordinarily, however, public policy does not prohibit an otherwise valid waiver of a federal cause of action. Shaheen v. B.F. Goodrich Co., 873 F.2d 105, 107 (6th Cir. 1989). In fact, public policy weighs in favor of permitting voluntary settlement of Title VII disputes. Id. When an agreement includes waiver of both EEOC claims and federal causes of action, the fact that the waiver of the right to file an EEOC charge is void does not invalidate the waiver of a cause of action with which it is conjoined. Wastak, 342 F.3d at 291 (citing EEOC v. Cosmair, Inc., 821 F.2d 1085, 1091 (5th Cir.1987)).

A release of a Title VII claim is valid only if it is "knowing and voluntary." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n. 15 (1974); Shaheen, 873 F.2d at 107. "Properly executed waivers of possible employment-related discrimination claims knowingly and voluntarily made between an employee and his employer will be enforced absent the typical exceptions for fraud, duress, lack of consideration or mutual mistake." Id. Although Title VII does not define "knowing and voluntary," the Older Workers Benefit Protection Act ("OWBPA") amendment to the Age Discrimination in Employment Act ("ADEA") delineates eight minimum requirements that a waiver of an ADEA claim must meet before it can be considered "knowing and voluntary." 29 U.S.C. § 626(f). They are:

> (1) The release must be written in a manner calculated to be understood by the employee signing the release, or the average individual eligible to participate;
>
> (2) the release must specifically refer to the ADEA;
>
> (3) the release must not purport to encompass claims that may arise after the date of signing;

5

(4) the employer must provide consideration for the ADEA claim above and beyond that to which the employee would otherwise already be entitled;

(5) the employee must be advised in writing to consult with an attorney;

(6) the employee must be given at least 21 or 45 days to consider signing, depending on whether the incentive is offered to a group;

(7) the release must allow the employee to rescind the agreement up to 7 days after signing; and

(8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible (or selected) for the program, and the corresponding information relating to employees in the same job titles who were not eligible (or not selected) for the program.

Howlett v. Holiday Inns, Inc., 120 F.3d 598, 600 (6th Cir. 1997). Although the instant case is not an ADEA case, the OWBPA provides a structure for determining if a waiver was knowing and voluntary. The Court finds that the agreement in the instant case satisfies the OWBPA criteria. The release was written in terms that the Court believes that the Plaintiff, or the average employee similarly situated, could understand. The release specified many federal causes of action, including Title VII. The agreement referred only to claims which arose up to the effective date of Plaintiff's termination. Defendant provided adequate consideration in exchange for Plaintiff's waiver. Among other benefits, Defendant paid Plaintiff $23,051.04 in severance pay to which the Plaintiff was not otherwise entitled. The agreement advised Plaintiff to consult with an attorney before signing. The agreement specified that Plaintiff was given 45 days to consider whether or not to sign. After signing, Plaintiff was given seven days to revoke the agreement.[3] Because the agreement satisfies the stringent requirements of the OWBPA, the Court holds that the severance agreement between

---

[3]The eighth criterion is inapplicable to the instant case.

Plaintiff and Defendant was knowing and voluntary.

Furthermore, although the majority of the Circuits look to a totality of circumstances approach, similar to that delineated in the OWBPA, in determining whether a waiver was voluntary and knowing, the Sixth Circuit applies ordinary contract principles and looks primarily to the clarity of the language in the agreement. Torrez v. Public Service Co. of New Mexico, Inc., 908 F.2d 687, 689 (10th Cir. 1990); Runyan v. National Cash Register Corp., 787 F.2d 1039, 1044 (6th Cir. 1986). The interpretation of a contract is a matter of law. Carrier v. Speedway Motorsports, Inc., 151 S.W.3d 920, 928 (Tenn. Ct. App. 2004) (citing Rapp Const. Co. v. Jay Realty Co., 809 S.W.2d 490, 491 (Tenn. Ct. App.1991)). When a court construes a contract, it should look to the parties' intention as expressed in the words used by the parties. Id. at 928-29 (citing Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975)). The words of the contract should be given their usual and ordinary meaning. Id. at 929. General principles of contract law require that when "the language of a contract is unambiguous, the parties' intent is discerned from the four corners of the contract." State v. Sudderth, 152 S.W.3d 24, 44 (Tenn. Crim. App. 2004).

Applying contract principles to this case, the agreement is clear and unambiguous, as it specifies that all claims of employment discrimination which arose up to and including the date of the agreement would be waived by Plaintiff as consideration for a severance package, including a lump-sum severance payment. Moreover, because Plaintiff was advised to consult with an attorney, was given 45 days to consider the agreement, and had seven days to revoke the agreement, overreaching or exploitation on the part of Defendant do not appear to be present.

Plaintiff contends, however, that she was under duress when she signed the agreement.

7

Plaintiff asserts that her discriminatory termination was "quite shocking." However, duress cannot be inferred from the emotional and financial stress associated with loss of a job. Melanson v. Browning-Ferris Industries, Inc., 281 F.3d 272, 277 (1st Cir. 2002); (see also, Pierce v. Atchison, Topeka and Santa Fe RR Co., 65 F.3d 562, 569 (7th Cir. 1995) ("Duress is not shown by the fact that one was subjected to . . . a difficult bargaining position or the pressure of financial circumstances. There must have been some imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness[es] of another."); Rutledge v. International Business Machines Corp., 972 F.2d 357 (10th Cir. 1992) (economic pressure alone not sufficient to void an otherwise valid release). "To hold otherwise would be to make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs and the like." Melanson, 281 F.3d at 277.

Although it is clear that Plaintiff's termination was exceedingly stressful and difficult, Plaintiff has not demonstrated that she was under any undue influence by Defendant when she signed the agreement. She was given 45 days to consider whether or not to sign and was encouraged to seek the assistance of an attorney. Thus, the Court holds that Plaintiff's waiver of employment discrimination claims was signed knowingly and voluntarily, without duress.

8

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is GRANTED

**IT IS SO ORDERED** this 28 day of February, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 15 in case 2:04-CV-02549 was distributed by fax, mail, or direct printing on March 1, 2005 to the parties listed.

---

Christopher J. Yost
FEDEX CORPORATION
3620 Hacks Cross Rd.
Third Floor, Building B.
Memphis, TN 38125--880

Cynthia King
1437 Central Avenue
#703
Memphis, TN 38104

Honorable Bernice Donald
US DISTRICT COURT